UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TERI T. LAKE,

        Plaintiff,

v.                                                                                  Case No.  8:06-cv-713-T-TBM

MICHAEL J. ASTRUE,[1]
Commissioner of the United States
Social Security Administration,

        Defendant.

                                     /


**O R D E R**

      The Plaintiff seeks judicial review of the denial of her claims for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out

herein, the decision is reversed and remanded.



I.

      Plaintiff was 55 years of age at the time of her administrative hearing in February,

2005.  Plaintiff has a high school education with one year of college.  Her past relevant work

was as an executive assistant, relocation coordinator, staffing coordinator and sandwich

maker.  Plaintiff applied for Supplemental Security Income payments in August 2002.  She

then applied for disability benefits in October 2002, alleging disability as of May 6, 2002, by

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

reason of extreme exhaustion, headaches, inability to concentrate, and flu-like aches throughout her body.  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by a non-attorney and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff testified that she is unable to work due to fatigue and an inability to concentrate.  By her account, she suffers chronic fatigue which leads to physical exhaustion and her whole body hurts like she is running a high fever.  She cannot function well, has difficulty making decisions, and makes too many mistakes.  Plaintiff suffers from depression.  She takes Zoloft and it helps, with no side effects.

Plaintiff testified she also has back problems that require her to change positions often.  Sometimes her lower legs give out and she falls.  She is seeing a neurologist for the problem and taking Flexeril.  She also has problems with her hands and arms.

By Plaintiff's account, she has good days and bad days.  She estimated that she has two good days a week.  On a good day, she can function some, on a bad day, she cannot.  She described her daily activity as mainly reading and watching television.  Sometimes she plays solitaire on her computer.  When she gets tired, she naps.  She testified that when she reads, she has to keep re-reading the same pages and she gets frustrated.  Her daughters occasionally help clean the house and go shopping for her.  Otherwise she does the chores and shops.  It takes her a while to complete the chores.  According to Plaintiff, she was a very social person

before her condition changed.  She used to walk a lot, sail, go to the theater and concerts, but not anymore.

She attempted to work part-time for a friend, but ultimately she could not manage to work two hours a day because she became fatigued and she hurt all over.  See Plaintiff's testimony (R. 300-10).

Steven Simon, Ph.D., a vocational expert ("VE"), testified on an assumption of a person of Plaintiff's age, education and work experience with the physical capacity for light exertional work, limited during an eight-hour day to four hours of standing and walking, with occasional postural limitations, the need to avoid temperature extremes as well as fumes and hazards, machinery, open heights, and uneven terrain.  On this hypothetical, the VE opined that such person could do Plaintiff's past work as an administrative clerk, transportation management coordinator, staffing coordinator and administrative clerk, but not as a sandwich maker.  Upon an assumption that such person could do only sedentary exertional work with a sit/stand option and was limited to simple tasks and a low stress environment, the VE opined that none of Plaintiff's past work would be available.  However, such person could perform jobs such as surveillance system monitor, telephone information clerk, and appointment clerk. If this individual would miss four days of work a month due to fatigue, there would be no jobs which she could perform.  See VE's testimony (R. 310-14).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

3

By his decision of August 28, 2005, the ALJ determined that while Plaintiff has severe impairments related to chronic fatigue syndrome and depression, she nonetheless had the residual functional capacity to perform a significant range of sedentary exertional work. Upon this finding and VE testimony, the ALJ concluded that while Plaintiff could not perform her past work, she could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 13-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. <u>Keeton v. Dep't of Health & Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  <u>Grant v. Richardson</u>, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  <u>Celebrezze v. O'Brient</u>, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  <u>Miles</u>, 84 F.3d at 1400; <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises several claims on this appeal.  By her initial claim, she complains

that the ALJ made inconsistent findings regarding her transferable skills.  By her argument, if

it is accepted that she had no transferable skills, Rules 201.06 and 201.14 of the Medical-

Vocational Guidelines (the "Grids") dictate that she be found disabled even if she could

perform a full range of sedentary work.  On the other hand, if she had transferable skills for

other sedentary work, Rules 201.07 and 201.15 would direct a finding of not disabled.

Plaintiff maintains that a finding that she had no transferable skills at age 55 is appropriate,

and the ALJ's conclusion that she was not disabled as of that time was incorrect.  Plaintiff

urges she should be found to lack transferable skills and thus disabled as of her onset date of

May 2002.  Plaintiff maintains the decision should be reversed for an award of benefits.

Alternatively, Plaintiff urges that the case be remanded to clear up the inconsistency

regarding transferable skills.  (Doc. 15 at 5-7).

In response, the Commissioner argues that Plaintiff's analysis is applicable only

when the ALJ relies upon the grids for decision.  In this instance, the ALJ relied upon the

grids solely as a framework for a decision and in conjunction with VE testimony tailored to

the Plaintiff's specific limitations.  (Doc. 16 at 7-11).

Concerning the application of the Grids, the introductory section to the Appendix

provides, in pertinent part, that:

> . . . where an individual has an impairment or combination of
> impairments resulting in both strength limitations and non-
> exertional limitations, the rules in this subpart are considered
> in determining first whether a finding of disabled may be
> possible based on the strength limitations alone and, if not,

6

> the rule(s) reflecting the individual's maximum residual
> strength capabilities, age, education, and work experience
> provide a framework for consideration of how much the
> individual's work capability is further diminished in terms of
> any types of jobs that would be contraindicated by the
> nonexertional limitations.

See 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2); see also Sryock v. Heckler, 764

F.2d 834, 836 (11th Cir. 1985); 20 C.F.R. §§ 404.1569a(d) and 416.416.969a(d); SSR 83-14,

1983 WL 31254, *3 (S.S.A.).  If the claimant is found disabled at this point, no further

inquiry need be made.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

On the matter of the transferability of acquired skills, the section in the Appendix

applicable to Grid Table No. 1 on sedentary work states:

> The presence of acquired skills that are readily transferable
> to a significant range of skilled work within an individual's
> residual functional capacity would ordinarily warrant a
> finding of ability to engage in substantial gainful activity
> regardless of the adversity of age, or whether the individual's
> formal education is commensurate with [her] demonstrated
> skill level.  . . .
>
> In order to find transferability of skills to skilled sedentary
> work for individuals who are of advanced age (55 and over),
> there must be very little, if any, vocational adjustment required.  . . .
>
> Individuals approaching advanced age (age 50-54) may be
> significantly limited in vocational adaptability if they are
> restricted to sedentary work.  When such individuals have no
> past work experience or can no longer perform vocationally
> relevant past work and have no transferable skills, a finding
> of disabled ordinarily pertains.  . . .

20 C.F.R. Part 404, Subpart P, App. 2, § 201.00(e), (f), and (g).

In this case, I am unable to ascertain whether the ALJ's decision complies with the

applicable regulatory provisions and/or is otherwise supported by substantial evidence.  As

such, a remand for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588-89

(11th Cir. 1987).  In reaching his decision, the ALJ purportedly used the Grids as a

framework for decision and, within that framework, noted that Rule 201.15 directed a finding

of not disabled.  (R. 18, 20).  Grid Rule 201.15 applies to individuals capable of sedentary

exertional work who have transferable skills and are closely approaching advanced age (50-

54 years old).  Thus, assuming that she had transferable skills, Rule 201.15 applied to Plaintiff

as of her alleged onset date.[2]  Here, however, the decision reflects that the ALJ made

contradictory findings as to whether Plaintiff had transferable skills.  Thus, at one point in the

decision, the ALJ stated that he agreed with the VE that Plaintiff had transferable skills (R.

17-18), and he included in the findings section of the decision a statement that Plaintiff had

transferable skills from the semi-skilled work previously performed (R. 20).  However, the

ALJ also stated that, "[b]orn on June 7, 1949, the claimant is currently 56- years old.  This is

defined in the regulations as an individual of advanced age.  (citation omitted).  She has one

year of college education and *has no transferable skills* given her age and reduced residual

functional capacity."  (R. 18).  According to the Grids, whether or not Plaintiff had

transferable skills is significant.  If Plaintiff had transferable skills, both for the period from

her alleged onset date until age 55 and after age 55 as well, Grid Rules 201.07 and 201.15

would direct a finding that she is not disabled.  However, if the finding by the ALJ is that

Plaintiff had no transferable skills during either period given her age and reduced functional

---

[2]Plaintiff was 52 years old on the alleged date of onset and was considered a person closely approaching advanced age.  See 20 C.F.R. §§ 404.1563(e), 416.963(e).  Plaintiff turned 55 years old on June 7, 2004, and was thereafter considered a person of advanced age. See 20 C.F.R. §§ 404.1563(d), 416.963(d).

capacity, Grid Rules 201.06 and 201.14 would direct a finding of disabled.  The

Commissioner argues that the Grids are irrelevant because the ALJ called upon a VE to

testify.  However, the VE was not called upon to address the circumstance of a person of

advanced age with no transferable skill.  By my reading, the ALJ appears to have concluded

that Plaintiff had no transferable skills after age 55.  As Plaintiff urges, if this is so, the Grids

dictate a finding of disabled.  Contrary to the Commissioner's argument, I do not see that

decision is salvaged by the fact that the ALJ employed VE testimony.  In any event, there is

no indication that the VE considered or addressed the circumstance of no transferrable skills

on or after age 55.  Thus, I am left uncertain of whether the decision is consistent with the

regulations and/or supported by substantial evidence.  Accordingly, remand on this issue is

warranted.

By her second claim, Plaintiff urges that the record supports her complaints of

chronic fatigue, physical exhaustion, and full body pain effecting her ability to function and

concentrate.  She complains that while the ALJ acknowledged the applicable standard for her

subjective complaints, he failed to set forth his reasons for rejecting those complaints.

Moreover, Plaintiff asserts that her solid work history, lack of daily activities, the fact that she

sold her house because she could no longer afford it, her inability to engage in activities she

formerly enjoyed and her efforts to work which failed because she could only work two hours

a day weigh heavily in favor of finding her testimony credible and the ALJ failed to consider

these factors.  Plaintiff urges there being no adequate explanation for discrediting her

subjective complaints, they must be accepted as true and her case remanded for an award of

benefits.  In the alternative, Plaintiff urges a remand is necessary for the ALJ to properly

evaluate the symptoms.  (Doc. 15 at 7-11).

        The Commissioner responds that the ALJ adequately discounted Plaintiff's

subjective complaints on the basis of the objective medical record, Plaintiff's reports to her

physicians that her medications were working and she felt renewed energy, and the absence of

objective testing to explain the cause of her complaints.  Citing to <u>Dyer v. Barnhart</u>, 395 F.3d

1206, 1211 (11th Cir. 2005), the Commissioner asserts there is no rigid requirement for the

ALJ to refer to every piece of evidence so long as the decision is not a broad rejection that

prevents a reviewing court from determining whether the ALJ considered the plaintiff's

medical condition as a whole.  (Doc. 16 at 11-15).

        Plaintiff is correct that in this circuit, subjective complaints such as pain, fatigue or

dizziness are governed by a three-part "pain standard" that applies when a claimant attempts

to establish disability through subjective symptoms.[3]  If the ALJ determines not to credit

subjective testimony, he must articulate explicit and adequate reasons for his decision.  <u>Id.</u> at

1561-62.  The failure of the ALJ to articulate the reasons for discrediting subjective testimony

requires, as a matter of law, that the testimony be accepted as true.  <u>Id.</u> at 1562 (citing <u>Cannon</u>

<u>v. Bowen</u>, 858 F.2d 1541, 1545 (11th Cir. 1988)); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054

---

        [3]By this standard, there must be evidence of an underlying medical condition and
either objective medical evidence that confirms the severity of the alleged symptom arising
from the condition or evidence that the objectively determined medical condition is of such
severity that it can be reasonably expected to give rise to the alleged pain.  <u>Holt</u>, 921 F.2d at
1223 (citing <u>Landry v. Heckler</u>, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's
subjective testimony supported by medical evidence that satisfies the standard is itself
sufficient to support a finding of disability.  <u>Id.</u> (citing <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011
(11th Cir. 1987)).

(11th Cir. 1986).  Further, the lack of a sufficiently explicit credibility finding may give

grounds for a remand if the credibility is critical to the outcome of the case.  Smallwood v.

Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  Thus, where credibility is a determinative

factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as

to amount to a specific credibility finding.  Foote, 67 F.3d at 1562.

Here, the ALJ clearly was aware of the applicable standard because he cited

Eleventh Circuit authority as well as the pertinent ruling and regulation.  (R. 17).  The

decision reveals that the ALJ credited Plaintiff with mental and physical impairments that

reasonably could give rise to her subjective complaints about fatigue and difficulty

concentrating, namely, chronic fatigue syndrome and depression, but not to the extent

claimed.  In these circumstances, it is evident that the ALJ complied with the applicable

standard.  See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  I agree, however,

that the ALJ's consideration of these subjective complaints was insufficient.

The ALJ rejected Plaintiff's subjective complaints of disabling fatigue primarily in

light of the opinion of Sidney Grau, M.D., who examined Plaintiff in January 2003 upon

request of the Office of Disability Determinations.  To this end, the ALJ accorded the

examiner's opinion controlling weight as his assessment was consistent with the medical

record overall and did not support Plaintiff's claim of disabling fatigue.  (R. 17). The ALJ

also rejected Plaintiff's complaints on the basis that the opinions of certain doctors were

based on her subjective complaints and not clinical findings, there was no evidence of a

positive straight leg raise test, Plaintiff denied having shortness of breath, and physical

examinations were normal.  (R. 16).  While these factors may provide support in some

11

instances, in this case the ALJ determined that Plaintiff suffered from chronic fatigue

syndrome.  The hallmark of such is persistent unexplained fatigue.  See Vega v. Comm'r of

Soc. Sec., 265 F.3d 1212, 1219 (11th Cir. 2001) (citing SSR 99-2p); Rose v. Shalala, 34 F.3d

13, 18 (1st Cir. 1994) (quoting POMS § DI 24575.005 (1993)).  Moreover, it is not unusual

for a person suffering from chronic fatigue syndrome to undergo physical examinations

resulting within normal limits.  See Rose, 34 F.3d at 18; see also Sabo v. Chater, 955 F. Supp.

1456, 1462 (M.D. Fla. 1996).  Equivocal diagnoses do not sufficiently support a finding that a

claimant does not suffer from chronic fatigue syndrome, see id., and thus the same should not

detract from when assessing the credibility of allegations related to such.  While the

Commissioner is correct that an ALJ need not accord any significant weight to disability

statements, in the context of chronic fatigue syndrome a treating physician's opinion takes on

increasing importance.  See SSR 99-2p, 1999 WL 271569, *7 (S.S.A.).  Finally, while it is not

possible to tell whether the ALJ considered Plaintiff's lengthy work history when assessing

her credibility, I agree that it is appropriate to do so.  Because the case is being remanded for

further review, the ALJ should also reconsider all the evidence related to Plaintiff's complaint

of disabling fatigue within the context of his finding of chronic fatigue syndrome and the law

applicable to the same.  If he again rejects the condition as disabling, he should set forth

adequate and explicit reasons for doing so.

Regarding Plaintiff's mental impairment and the credibility of her subjective

allegations related thereto, the ALJ rejected Plaintiff's complaints of concentration problems

primarily on the basis of the report of Edith T. Dalton, Ph.D., a psychologist who evaluated

Plaintiff in March 2003 upon request of the Office of Disability Determinations.  See (R. 15,

17).  The ALJ noted that "Dr. Dalton's psychological examination concluded that the

claimant's symptomatology suggested a cognitive dysfunction and that her complaints of poor

concentration and forgetfulness were not substantiated by the psychological tests, i.e.-

screening tasks in the mental status examination."  That conclusion appears to provide

substantial evidence for discounting Plaintiff's claim of disabling deficits in concentration

arising from a mental impairment.  As such, if this were the only challenge to the ALJ's

decision, a remand would not be warranted.  However, the ALJ did not consider Plaintiff's

allegations in light of, or resulting from, her chronic fatigue syndrome.  Difficulty

concentrating is one of the symptoms of the disease.  See

http://www.nlm.nih.gov/medlineplus/ency/article/001244.htm (last visited on 8/27/07).  On

remand, the ALJ would be well advised to address the import, if any, of Plaintiff's claimed

concentration difficulties as such relate to chronic fatigue syndrome, particularly given that

she routinely complained about such to her doctors.

     Finally, Plaintiff complains that the ALJ gave controlling weight to the opinions of

consultative examiners Dr. Grau and Dr. Dalton.  Relying on Social Security Ruling (SSR)

96-2p, Plaintiff complains that such controlling weight may only be afforded to treating

physicians and the ALJ's decision to provide these doctors' opinions controlling weight

requires a reversal with remand.[4]  (Doc. 15 at 11).

---

[4]In support of this argument, Plaintiff relies on SSR 97-2p and 20 C.F.R. §§ 404.1503
and 416.902, which Plaintiff reads as requiring that, for a doctor's opinion to be accorded
controlling weight, the doctor must be a treating source (as opposed to a doctor that examines
a claimant on only one occasion)..

The Commissioner responds that under the circumstances here, i.e., where the

opinions of Plaintiff's treating physicians were not helpful in determining the limitations

caused by her impairments, the ALJ was permitted to rely on the opinions of the consulting

doctors.  (Doc. 16 at 16-17).

Plaintiff's argument is not persuasive.  The stated purpose of SSR 96-2p is "to

explain terms used in our regulations on evaluating medical opinions concerning when

treating source medical opinions are entitled to controlling weight, and to clarify how the

policy is applied."  SSR 96-2p, 1996 WL 374188, *1 (S.S.A.).  Plaintiff is correct that the

ruling states that, ". . . opinions from sources other than treating sources [i.e., examining or

consultative doctors] can never be entitled to 'controlling weight.'"  SSR 96-2p, *2.

However, I read that provision as clarifying that, while there are instances in which a treating

source opinion must be adopted or accorded controlling weight, non-treating sources are

never entitled to such deference per se.  Stated otherwise, the ruling and related regulations

never require that an ALJ accord controlling weight to the opinions of non-treating sources.

The fact that an ALJ may determine that it is appropriate to adopt or give controlling weight

to the opinion of a one-time examining doctor does not violate the letter or spirit of the ruling,

particularly in circumstance that exist here, i.e., when the claimant's treating medical sources

cannot or do not provide sufficient evidence about alleged impairments to make a disability

determination, and Plaintiff does not point to controlling authority concluding otherwise.[5]

[5]As the Commissioner notes, while two of Plaintiff's treating physicians completed forms indicating that Plaintiff was disabled, the regulations explicitly state that a statement by a medical source that a claimant is disabled or unable to work are not entitled to special weight.  See 20 C.F.R. § 404.1527(e)(1), 416.927(e)(1).

14

Indeed, it is reversible error for an ALJ to not order a consultative examination or evaluation in situations such as those.  See Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 28th day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

15